IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRANCH BANKING AND TRUST CO., )
Successor in interest to Colonial Bank, by )
Asset acquisition from the FDIC, as )
Receiver for Colonial Bank, ) Civil Action No. 10-00289-KD-C
    Plaintiff, )
     )
v. )
     )
W.K. BRENT BROADERIP, )
    Defendant. )

## ORDER

This matter is before the Court on the Plaintiff's Motion for Summary Judgment (Docs. 41, 42), the Defendant's Response (Doc. 49) and the Plaintiff's Reply (Doc. 54); and the Plaintiff's Motion to Strike (Doc. 53) and the Defendant's Response (Doc. 56). Upon consideration the Motion for Summary Judgment is **GRANTED.** The court finds the Motion to Strike **MOOT.**[1]

**I.**      **Factual Background**

This action arises from a dispute surrounding certain loan agreements which resulted in Plaintiff's claim against Defendant W.K. Brent Broaderip ("Broaderip") for Breach of Guaranty in the amount of $2,317,559.05, as well as $168,128.73 in attorney's fees and costs.

Specifically, on July 20, 2005, Colonial Bank (as Lender), Pine Hill (as Borrower) and

---

[1] With the December 1, 2010 rules change to Rule 56, it no longer appears that motions to strike submitted on summary judgment are appropriate. Revised Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED.R.CIV.P. 56(c)(2). The Advisory Committee Notes specify as follows: "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. ***There is no need to make a separate motion to strike***. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." FED.R.CIV.P. Adv.Comm.Notes (2010 Amendments (emphasis added)).

1

Broaderip (as Guarantor) executed a Loan & Security Agreement in the amount of $17,000,000.00. (Doc. 41-1 at 5 at ¶8 (Aff. Justiss)).[2] Pursuant to the Loan Agreement, Colonial Bank issued Pine Hill a guidance line of credit (which was later changed to an open-ended revolving line of credit in October 2006 and ultimately to a single-pay loan in October 2008). (Doc. 41-1 at 5 at ¶9 (Aff. Justiss)). Defendant Broaderip executed the Loan & Security Agreement as the Manager of Pine Hill Development, LLC ("Pine Hill"). (Doc. 41-1 at 34).

On July 20, 2005, Pine Hill (as Borrower) executed a Promissory Note with Colonial Bank (as Lender) in the amount of $16,500,000 (which was corrected by a October 12, 2006 Corrected Promissory Note and later extended by February 20, 2008, June 24, 2008 and September 10, 2008 Commercial Loan Extension Agreements). (Doc. 41-1 at 5-6 at ¶¶10-12 (Aff. Justiss)).

On July 20, 2005, Broaderip executed a Continuing Guaranty Agreement ("the 2005 Guaranty") in support of a Loan & Security Agreement executed between Colonial Bank (Lender), Pine Hill (Borrower) and Broaderip (Guarantor) in the aggregate principal amount of $17,000,000.00. (Doc. 41-1 at 7 at ¶19 (Aff. Justiss)). The 2005 Guaranty provides that Broaderip personally and unconditionally guaranteed the prompt payment and performance of Pine Hill's obligations to Colonial Bank; and his obligations under the 2005 Guaranty cover all obligations and indebtedness of Pine Hill to Colonial Bank and are continuing and include any future extensions of credit, renewals and extensions of the indebtedness. (Doc. 41-1 at 94-97).

On December 3, 2008, the Corrected Promissory Note was renewed. (Doc. 41-1 at 6 at ¶¶13 (Aff. Justiss)). Specifically, Pine Hill entered into a Renewal Promissory Note and Amended and Restated Loan and Security Agreement with Colonial Bank whereby Pine Hill acknowledged that it

---

2  Philip Justiss is a Vice-President in the Acquired Assets Group of BB&T. (Doc. 41-4 at 2 (Aff. Justiss)).

was indebted to Colonial Bank in the aggregate principal amount of $6,591,092.30, and Colonial Bank agreed to renew the loan under the terms set forth therein. (Doc. 41-1 at 6 at ¶¶13-14 (Aff. Justiss)). The Renewal Promissory Note was renewed for a final time by the April 15, 2009 Commercial Promissory Note and Security Agreement in the principal amount of $6,143,708.05. (Doc. 41-4 at 6 at ¶15 (Aff. Justiss)). By its terms the Note was to be repaid in consecutive monthly payments of interest only on the 15th day of each month with all outstanding principal, costs and any accrued and unpaid interest due and payable in full on July 15, 2009 (the maturity date); and if Pine Hill was more than 9 days late in making a payment, Pine Hill agreed to pay a late charge of the lesser of $100 or 5% of the payment in default. (Id. at 7 at ¶¶16-17 (Aff Justiss); Doc. 41-1 at 91 (2009 Note)). This April 15, 2009 Note is the "only active promissory note" and "evidences all of the indebtedness of Pine Hill." (Id. at 7 at ¶15 (Aff. Justiss)).

On April 15, 2009, Pine Hill, through its Member Broaderip, entered into a Commercial Promissory Note and Security Agreement with Colonial Bank whereby Colonial Bank renewed the balance of the Pine Hill loan in the amount of $6,143,708.05 with a maturity date of July 15, 2009. (Doc. 41-1 at 6-7 at ¶¶15-16 (Aff. Justiss)).

On April 15, 2009, Broaderip executed a second Guaranty (the "2009 Guaranty Agreement") personally and unconditionally guaranteeing the prompt payment and performance of Pine Hill's obligations to Colonial Bank. (Doc. 41-1 at 7 at ¶20 (Aff. Justiss)). The 2009 Guaranty contains provisions that are identical in all material respects with the 2005 Guaranty. (Doc. 41-1 at 99).

The Federal Deposit Insurance Corporation ("FDIC") was appointed as the Receiver for Colonial Bank on August 14, 2009. (Doc. 41-1 at 3 at ¶3 (Aff. Justiss)). Plaintiff entered into a Purchase and Assumption Agreement with the FDIC pursuant to which it acquired assets of Colonial

3

Bank, including the loan and loan documents at issue in this case. (Id. at 3 at ¶¶3-4 (Aff. Justiss)). The assets acquired by Plaintiff under the Purchase and Assumption Agreement include the obligations of Pine Hill and Broaderip (i.e., the Promissory Note, the 2005 Guaranty, the 2009 Guaranty and the related loan documents at issue in this case). (Id. at 3 at ¶4 (Aff. Justiss)).

Pine Hill defaulted on its obligations under the loan documents. (Doc. 41-1 at 8 at ¶23 (Aff. Justiss)).

On November 24, 2009, Broaderip executed a Forbearance Agreement in favor of Plaintiff both on behalf of Pine Hill and individually as the Guarantor of the Note. (Doc. 41-1 at 8 at ¶24 (Aff. Justiss)). In so doing, Broaderip acknowledged that he executed an unlimited continuing guaranty agreement, guaranteeing the payment of all indebtedness of Pine Hill to Plaintiff; that Pine Hill was indebted to Plaintiff pursuant to the Note; that the principal balance outstanding on the Note as of October 29, 2009 was $5,445,139.86; and that the Note matured on July 15, 2009 and remained unpaid. (Id. at 8 at ¶25 (Aff. Justiss)). Pursuant to its terms, the Forbearance Agreement expired on March 20, 2010. (Id. at 8 at ¶26 (Aff. Justiss)). Upon the expiration of the Forbearance Agreement, Pine Hill failed to make payment in full of the Note and Plaintiff accelerated its rights and remedies under the loan documents pursuant to the terms of the Forbearance Agreement. (Id. at 8 at ¶27 (Aff. Justiss)).

On March 25, 2010, Plaintiff provided Pine Hill and Broaderip with written notice of the default, demand for payment in full of all obligations owed under the Note and the acceleration of the loan as permitted under the loan documents. (Doc. 41-1 at 8-9 at ¶28 (Aff. Justiss)). In response to Plaintiff's demand letter, Broaderip sent an e-mail to Plaintiff's representative on March 29, 2010, acknowledging receipt of the demand letter and stating that he had received the notice. (Doc. 41-1 at

8 at ¶29 (Aff. Justiss)). Despite written demand having been made upon Broaderip and Pine Hill by Plaintiff, the amount due has not been paid. (Doc. 41-1 at 9 at ¶29 (Aff. Justiss)).

Plaintiff noticed a foreclosure sale of the real property securing the Note for May 19, 2010. (Doc. 41-1 at 9 at ¶30 (Aff. Justiss)). Plaintiff cancelled the foreclosure sale upon notice that Pine Hill filed for bankruptcy (on May 18, 2010, Pine Hill filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the S.D.Ala. (No. 10-02245)). (Doc. 41-1 at 9 at ¶31 (Aff. Justiss)). On September 22, 2010, Pine Hill's bankruptcy case was dismissed. (Doc. 41-1 at 9 at ¶32 (Aff. Justiss)). Subsequently, Plaintiff re-noticed the foreclosure sale for November 8, 2010 and foreclosed on the property securing the Note for a credit bid of $3,428,800. (Doc. 41-1 at 9 at ¶32 (Aff. Justiss)).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a

form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III. Breach of Guarantees[3]

---

3 This Complaint was brought on the basis of diversity jurisdiction such that the laws of the State of Alabama apply. Additionally, the Amended Loan Agreement selects the law of the State of Alabama to govern the loan documents. (Doc. 41-1 at 76).

### A. Liability

"Every suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." Delro Industries, Inc. v. Evans, 514 So.2d 976, 979 (Ala. 1987). See also e.g., Vision Bank v. Algernon Land Co., LLC, Slip Copy, 2011 WL 1380062, *7-8 (S.D. Ala. Apr. 12, 2011); Sharer v. Bend Millwork Sys., Inc., 600 So.2d 223, 225-226 (Ala. 1992). If the guaranty is a continuing guaranty (such as those at issue in this case) an additional element of notice to the guarantor of the debtor's default must also be proven; however, the guarantor can waive this notice requirement through the terms of the guaranty. See, e.g., Sharer, 600 So.2d at 226. It has been held, however, that "[t]he language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it." Wells Fargo Bank v. Richard D. Horne, LLC, Slip Copy, 2010 WL 5376341, *3 at n. 1 (S.D. Ala. Dec. 27, 2010). See also RBC Bank v. CMI Electronics, Inc., Slip Copy, 2010 WL 2719096, *2 (M.D. Ala. Jul. 8, 2010) (providing that "[i]n the case of a continuing guaranty, it is also necessary to prove that the guarantor received notice of the debtor's default, unless that right has been waived by the terms of the guaranty contract.").

As to the binding effect of the terms of the guaranty on the guarantor, the Alabama Supreme Court has held:

> The guaranty agreement in this case is an unconditional one. Because the guaranty agreement secures a principal or primary obligation, the liability of the guarantor also depends upon a construction and application of the primary contract. 38 Am.Jur.2d Guaranty § 73 (1968). As the Court of Civil Appeals correctly noted, the terms of the guaranty agreement control the obligations of the guarantor. However, we note that when a contract of guaranty is unconditional and does not limit in any

> way the obligations of the guarantor, the liability of the guarantor will not exceed the liability of the principal debtor. 38 Am.Jur.2d Guaranty § 74 (1968). Therefore, all guaranty contracts are conditioned upon the principal contract between the creditor and the principal debtor. 38 Am.Jur.2d Guaranty § 74 (1968); *Northern Indiana Steel Supply Co. v. Chrisman,* 139 Ind.App. 27, 204 N.E.2d 668 (1965).
>
> In order to be entitled to enforce the obligation of the contract of guaranty, the creditor must show that the guaranteed debt or obligation is due, and if for any reason the debtor is not bound to make payment to the creditor, then the creditor may not hold the guarantor liable. 38 Am.Jur.2d Guaranty § 77 (1968). Like a surety, a guarantor is liable only in the event and to the extent that the principal is liable. 38 Am.Jur.2d Guaranty § 77 (1968).

Ex parte Kaschak, 681 So.2d 197, 200 (Ala. 1996) (emphasis added). Furthermore, when a contract is "one of absolute guaranty," as in this case, "the failure of the principal to pay the debt within the time provided in the principal contract fixed the liability of the guarantors, without regard to the question of the principal's solvency or insolvency, and the plaintiff was under no duty to the guarantors to pursue its remedy against the principal as a prerequisite to its right to recover against the guarantors." Ehl v. J.R. Watkins Medical Co., 112 So. 426, 426 (Ala. 1927). See also e.g., In re Waters, 8 B.R. 163, 167 (Bkrtcy. N.D. Ga. 1981) (providing that "[g]enerally, for a guarantor to become liable under a guarantee of payment there need only be a failure of the primary obligor to make payment"); In re Southern Cinemas, Inc., 256 B.R. 520, 527 (Bkrtcy. M.D. Fla. 2000) (holding under Alabama law that "[i]n order to be entitled to enforce the obligation of the contract of guaranty, the creditor must show that the guaranteed debt or obligation is due.").

In this case, each of these elements is met. As detailed *infra*, the uncontroverted evidence shows the existence of two Guarantees by Broaderip; Pine Hill's default on the underlying contract (the Renewal Note); non-payment by Broaderip; and that while not required (Broaderip expressly waived his right to notice) to inform Broaderip of the default or demand payment on the two

Guarantees, Plaintiff did so.

1.  **Existence of Guaranty**

Based on the record, the 2005 and 2009 Guarantees exist and are enforceable (not cancelled), as authenticated by the Plaintiff's records custodian Phillip Justiss. See *supra* Section I. In response, on summary judgment, Broaderip does not dispute the existence of the 2005 or 2009 Guarantees. Moreover, the record reveals that Broaderip admitted that he, in his individual capacity, executed and delivered to Colonial Bank, the 2005 and 2009 Guarantees and that his handwritten signature appears on same. (Doc. 41-6 at 14 (Broaderip's Responses to Plf's RFA ##10, 11, 30-31)). Broaderip further admitted in discovery that he individually executed the Forbearance Agreement in which he acknowledges that he personally guaranteed the indebtedness of Pine Hill to Plaintiff. (Doc. 41-6 at 14-15 (Broaderip's Responses to Plf's RFA ##32-35)). As such, Plaintiff has established the existence of the 2005 and 2009 Guarantees.

2.  **Default**

The record reveals that Pine Hill defaulted under the terms of the underlying contract – the Renewal Note – by failing to make payment when due. (Doc. 41-6 at 15 (Broaderip's Responses to Plf's RFA #40)). On summary judgment, Broaderip does not dispute that Pine Hill defaulted on the Renewal Note and/or that Pine Hill has not made payment in full of the balance due under the Renewal Note. Moreover, the record reveals that the Renewal Note is authenticated by Plaintiff's record custodian and that as holder of the note, Plaintiff is entitled to enforcement. See *supra* Section I. The Justiss Affidavit indicates further that Pine Hill defaulted under the Note for failing to make payment in full of the balance due on the Maturity Date and thereafter upon the expiration of the Forbearance Agreement. (Id.)

9

### 3. Non-Payment

Plaintiff contends that there are no issues of material fact regarding Broaderip's non-payment of the amounts due under the 2005 and 2009 Guarantees. On summary judgment, Broaderip does not dispute the issue of non-payment. Moreover, the record reveals that despite Plaintiff's demand for payment, Broaderip has failed to pay the full amounts due under the Renewal Note and 2005 and 2009 Guarantees. See *supra* Section I.

### 4. Notice

Based on the terms of the loan documents, Broaderip expressly waived his right to receive notice of Pine Hill's default under the 2005 and 2009 Guarantees such that Plaintiff was under no obligation to provide him with notice of Pine Hill's default under the Renewal Note. (Doc. 41-1 at 95, 99). Nevertheless, even though Broaderip expressly waived his right to receive notice of Pine Hill's default under the Guarantees, Plaintiff provided him with notice of said default and demanded payment for all obligations under the Loan Documents in the Demand Letter. See *supra* Section I. Broaderip confirmed receipt of this March 29, 2010 Demand Letter to Plaintiff's records custodian. (Doc. 41-1 at 114).

In sum, in response to Plaintiff's motion for summary judgment, Broaderip has not disputed any of the Plaintiff's representations and/or evidence regarding the aforementioned four (4) elements concerning his liability under the applicable agreements. In fact, Broaderip is wholly silent as to the elements for a prima facie case to enforce the guarantees at issue (*i.e.*, his liability under the applicable loan agreements). Thus, Plaintiff has established Broaderip's liability under the Guarantees – his breach of the 2005 and 2009 Guarantees and that he unconditionally guaranteed payment of all of Pine Hill's indebtedness -- and is entitled to recovery pursuant to same.

Accordingly, in light of the foregoing, the Plaintiff's motion for summary judgment is **GRANTED** concerning the liability of Defendant Broaderip under the Renewal Note, 2005 Guaranty and 2009 Guaranty. The Court now turns to the issue of damages.

**B.** **Damages**

According to Plaintiff, the total amount of indebtedness due under the loan documents as of June 1, 2011 is **$2,149,430.32** (excluding attorneys' fees and costs). (Doc. 41-4 at 10 at ¶36 (Aff. Justiss)). Specifically, Plaintiff asserts that after application of all just credits including the Bid, as of June 1, 2011, and the **principal** balance due under the Note – is **$1,467,810.54.** (Doc. 41-4 at 10 at ¶34 (Aff. Justiss)). Additionally, Plaintiff seeks recovery of the **interest accrued** and unpaid on the Note through June 1, 2011 in the amount of **$663,932.26,** noting that interest continues to accrue after June 1, 2011 at the rate of $482.57 per day so long as the principal balance is not reduced. (Doc. 41-4 at 10 at ¶¶35-36 (Aff. Justiss)). Moreover, Plaintiff seeks recovery of **late fees** in the amount of **$17,687.52** pursuant to the terms of the Note. (Id.)

The only factual issue which is disputed by Broaderip on summary judgment is the amount of damages the Plaintiff seeks for the default of his obligations under the applicable loan agreements. Broaderip's Affidavit and opposition to summary judgment focus on the purported inadequacy of the foreclosure – alleging Plaintiff "through gross negligence, [intentionally] misconducted the foreclosure sale." From this, Broaderip contends that if the Plaintiff "took actions which resulted in …[him]…not receiving reasonable credit for the value of the collateral" then the Plaintiff "should not be entitled to the full value of its alleged damages." (Doc. 49 at 7-8). In other words, Broaderip contends that the Plaintiff is not due the full amount of damages it seeks to recover from him because the Plaintiff failed to mitigate its damages by acting with gross negligence and/or

intentional misconduct in conducting the foreclosure sale.

In his Answer to the Plaintiff's Complaint,[4] Broaderip asserts 13 affirmative defenses:

**First Affirmative Defense**
The Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**Second Affirmative Defense**
The Defendant denies there exists a contractual relationship between the Plaintiff and the Defendant.

**Third Affirmative Defense**
The Defendant denies that he breached any contract with the Plaintiff.

**Fourth Affirmative Defense**
The Defendant denies there was any default in the Promissory Note by Pine Hill Development, or that the amount owed on said Promissory Note is as stated in the Complaint.

**Fifth Affirmative Defense**
The Defendant disputes that the Plaintiff is entitled to the damages it states in its Complaint.

**Sixth Affirmative Defense**
The Defendant pleads that the Plaintiff does not come before this Court with clean hands, therefore, it is not entitled to the relief requested.

**Seventh Affirmative Defense**
The Defendant pleads that the Plaintiff's Complaint is based on statements which are incomplete, inaccurate and untrue, therefore, it is not entitled to the relief sought due to said misrepresentations.

**Eighth Affirmative Defense**
The Defendant pleads the affirmative defense of waiver.

**Ninth Affirmative Defense**
The Defendant pleads the affirmative defense of estoppel.

**Tenth Affirmative Defense**
This Court lacks personal jurisdiction.

---

4 The Court notes that while the Plaintiff filed an Amended Complaint on December 2, 2010, (Doc. 28), Broaderip never filed an Answer to same.

**Eleventh Affirmative Defense**
The Defendant pleads the affirmative defense of fraud.

**Twelfth Affirmative Defense**
The Plaintiff has not acted in good faith. Upon information and belief, the Plaintiff has an agreement with the FDIC in which the Plaintiff will be reimbursed for all losses. Therefore, the Plaintiff had no incentive to mitigate its damages and failed to do so.

**Thirteenth Affirmative Defense**
The Defendant pleads the affirmative defense of contributory negligence.

**Fourteenth Affirmative Defense**
The Defendant reserves the right to assert any defenses as they become known in the course of this matter.

(Doc. 20 at 3-4).

Pursuant to the terms of the 2005 Guaranty, Broaderip executed a "full, absolute, and complete" express and knowing waiver of any defenses (and claims) which he may have concerning the Plaintiff's claims against him relating to the Guaranty, his obligations and/or the duties or actions of the Plaintiff, except for gross negligence or intentional misconduct:

> **5. Guarantors Waiver of Defenses and Claims.** The *Guarantor* hereby *knowingly and expressly waives any defenses it has or may have as to claims made hereunder by the Bank, and waives any claims it has or may have which relate in any way to this Guaranty, the Guarantor's obligations, or the duties or actions of the Bank. This waiver is full, absolute, and complete, and includes, among other defenses and claims, the defenses and claims of estoppel, failure of consideration, illegality, statute of frauds, statute of limitations, waiver, misrepresentation and failure by the Bank to do anything in the making, renewal, extension, review, servicing, collateralization, and collection of the indebtedness, or any part thereof.* Further, *Guarantor expressly waives any defense or claim it may have against the Bank for its negligent misconduct, provided, however, Guarantor does not waive any defense or claim it may have against the Bank which arises as a result of the Bank's gross negligence or intentional misconduct*. Guarantor also waives any defenses or claims it may have resulting from the Bank's failure to make, perfect, properly handle, or in any way act with regard to any mortgage, security interest, pledge, conveyance, assignment or any other interest given as security or collateral, or to be given as security or collateral, for the indebtedness or any part thereof. *The Guarantor waives any defense or claim it may have for the Bank's failure:* (1) to obtain the signature, or

> any act, of the Debtor or another Guarantor, any one of them, as part of this agreement, the indebtedness, or any part thereof, or any documents incident thereto; (2) to proceed against the Debtor or another Guaranty, or any one of them, or against any Probate or Bankruptcy Estate of either the debtor or another Guarantor, with regard to the indebtedness or any part thereof; or *(3) to pursue any remedy which the Bank may have, under this or any other agreement, or under any applicable law.* The Guarantor further waives any defense or claim that the Debtor, or any other Guarantor may have, in respect of the indebtedness, or any part thereof. The Guarantor waives any right to any notice whatsoever, including any notice with regard to the creation, extension or renewal of the indebtedness, or any part thereof, notice of the Debtor's default or failure of performance in any regard, notice of presentment, notice of demand, notice of protest, notice of dishonor, notice of acceptance of the guaranty or any document evidencing the indebtedness, or any part thereof. THE GUARANTOR EXPRESSLY AGREES THAT THE BANK OWES NO DUTY TO THE GUARANTOR.

(Doc. 41-1 at 95 at ¶5 (emphasis added)). As such, Broaderip's asserted affirmative defenses, which may have been applicable at this stage of the litigation, were clearly waived in the guaranty agreement and are not viable.

Significantly, Broaderip did not even assert in his Answer the only two defenses or claims which he would have been entitled to raise against the Plaintiff; "gross negligence" and/or "intentional misconduct."[5] Even if the court were to construe the assertion of fraud (Eleventh Affirmative Defense) as an assertion of "intentional misconduct," Broaderip does not avoid summary judgment. Broaderip's purported evidence, *i.e.* his own conclusions based on a March 2009 appraisal, that there "are glaring problems with the [March 2010] appraisal" including the comparables used, utterly fails to sustain Broaderip's burden to show that BB&T engaged in intentional misconduct (or even gross negligence) in collecting its indebtedness. Moreover, the deficiency in evidence is not cured by Broaderip's unsupported speculation that BB&T had a sinister

---

5 Broaderip's "Fourteenth Affirmative Defense" which attempts to reserve the right to assert affirmative defenses at any point is not a cognizable placeholder for asserting new affirmative defenses in response to a summary judgment motion.

14

motive to maximize their loss on the sale of the property.

Furthermore, as noted in the 2005 Guaranty, "THE GUARANTOR EXPRESSLY AGREES THAT THE BANK OWES NO DUTY TO THE GUARANTOR[]" (Doc. 41-1 at 95 at ¶5), such that the Plaintiff owes no duty to Broaderip to mitigate damages. Thus, Broaderip's attempt to allege fraud and/or failure to mitigate in response to summary judgment is unavailing.

Accordingly, the Court finds that the Plaintiff is entitled to the amount of damages sought from Broaderip in the amount of **$2,149,430.32,** such that the Plaintiff's motion for summary judgment on this issue is **GRANTED.**

### IV.     Attorney's Fees & Costs

Based on the terms of the Renewal Note, 2005 Guaranty and 2009 Guaranty, and the Affidavit of Bess M. Parrish Creswell (Plaintiff's counsel and Senior Associate at Burr & Forman, LLP), Plaintiff seeks reimbursement for **$168,128.73** in **attorney's fees and costs** ($159,652.85 in fees and $8,475.88 in costs, as supported by the Affidavit of Plaintiff's counsel. (Doc. 41-1 at 9-10 at ¶33 (Aff. Justiss); Doc. 41-7 (Aff. Creswell)).

At the outset, Broaderip does not dispute the Plaintiff's requests for attorneys' fees and costs, and in fact, makes no mention of same in opposition to summary judgment. Additionally, the record reveals that pursuant to the Note, Pine Hill agreed that in the case of default, it would "pay all costs…in connection with the collection of the [Note] and enforcement of any rights… including reasonably attorney fees and legal expenses…." (Doc. 41-1 at 91-92). Also, in the 2005 Guaranty and 2009 Guaranty, Broaderip agreed to "pay the costs of enforcing this Guaranty and…obligations hereunder, including a reasonable attorneys' fee" and to "pay all…costs incurred to enforce this Guarantee, including reasonable attorney fees." (Doc. 41-1 at 96, 99). Moreover, in the

15

Forbearance Agreement, Broaderip agreed to pay court costs and attorneys' fees upon a breach or termination of the Forbearance Agreement. (Dc. 41-1 at 104-105). Accordingly, it appears that the Plaintiff is entitled to such fees and costs pursuant to the terms of the contractual agreements at issue in this case. Nevertheless, the Court cannot award such fees and costs at the present time.

While the Plaintiff has submitted the Affidavit of Senior Associate Creswell in support of recovery of such fees and costs, the Affidavit is insufficient. Creswell asserts that the fees and costs sought are reasonable and describes in general fashion the types of services performed during 679.80 hours of work. (Doc. 41-7 at 3-4 at ¶¶4, 5, 7). However, the Plaintiff has submitted no documentation in support of the specific amounts requested (*i.e*., no itemized statements, no billing records, no copies of invoices, no information as to hourly rates for attorneys, etc.). The sole evidence Plaintiff provides in support of these fees and costs is the Affidavit of counsel Creswell, which fails to identify the names and titles of the individuals who rendered service to Plaintiff in connection with this litigation, or any information regarding their respective skill and experience levels. Nor does the Affidavit contain records listing the amount of time spent on each of the tasks with respect to which the claimed fees were incurred. The Affidavit likewise fails to itemize the billing rate of the individuals involved and/or include any copies of billing records for the expenses sought. In sum, the Plaintiff has failed to provide proper necessary documentation in support of its request, such that the Court lacks sufficient information to conclude that the attorneys' fees and costs requested are reasonable.[6]

---

6 The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. See, e.g., State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala. 2002); City of Birmingham v. Horn, 810 So.2d 667, 681-682 (Ala. 2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala. 1992). See also Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir. 1984). The

Plaintiff is **GRANTED LEAVE** to file an amended motion for attorney's fees and costs, on or before **August 25, 2011**, with detailed records that will permit this Court to fashion an award of reasonable attorneys' fees and costs consonant with Alabama law. Any response should be filed by **September 8, 2011.**

V.      Conclusion

Accordingly, it is **ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. 41) is **GRANTED** in favor of Plaintiff and against Defendant Broaderip as to liability and damages.

**DONE** and **ORDERED** this the **11ᵗʰ** day of **August 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

Alabama Supreme Court has set forth 12 criteria that courts may consider when determining the reasonableness of an attorney fee: "(1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala. 1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable but they are not an exhaustive list of specific criteria that must all be met. Beal Bank, SSB v. Schilleci, 896 So.2d 395, 403 (Ala. 2004)